AYWON FILM CORPORATION, PLAINTIFF-APPELLANT, v. J. FRANK HATCH, DEFENDANT-RESPONDENT.

Argued May 7, 1924—Decided November 24. 1924.

Contracts—Failure to Accept Motion Picture Films—Defense that They Were Not According to Agreement—Remarks of Trial Judge Not Prejudicial—Counter-claim for Money Paid for Films Delivered—Evidence Examined and Judgment for Defendant on Counter-claim Sustained.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff-appellant, *I. Faerber Goldenhorn* (*Samuel S. Stern,* of counsel).

For the defendant-respondent, *Edward Schoen.*

PER CURIAM.

The plaintiff instituted in this court an action to recover damages for the defendant's failure to accept under an agreement in the nature of a lease certain moving picture films referred to in the agreement as "two-reel Mary Pickford reissues." The defendant filed an answer setting up that the reels offered were not as represented, and did not

comply with the terms of the agreement. A counter-claim was also filed to recover from the plaintiff the moneys paid for the films delivered, and damages for breach of the agreement. The case was tried at the Hudson Circuit, and resulted in a verdict for the defendant upon the counter-claim of $956.68. The plaintiff applied to the trial judge for a rule to show cause why the verdict should not be set aside. The rule was granted.

Under this rule the plaintiff first contends that certain remarks made by the trial judge during the progress of the trial were so prejudicial to the plaintiff as to prevent it from having its case determined upon the merits. The day of the trial was July 20th, 1923. The mercury stood at ninety degrees. The extreme heat, undoubtedly, affected counsel and the court. The record discloses some comments made by the trial judge which would probably not have been made had the heat been less oppressive. We have examined the remarks complained of and are of the opinion that their effect upon the jury was not as serious as the plaintiff's counsel argues, and that the plaintiff was not prejudiced thereby. The court, in its charge, made it clear to the jury that they should not be influenced against the plaintiff by the colloquies which had taken place between the court and plaintiff's counsel.

The plaintiff next argues that the court erroneously permitted the defendant to introduce evidence as to the alleged unmerchantability of the films delivered. The contract provided for the furnishing to the defendant by the plaintiff of fifteen two-reel Mary Pickford reissues. Each of said pictures were to consist of two reels of film. When delivered the defendant found that one reel contained no pictures of Mary Pickford, but was padded or filled with titles and reading matter. The court admitted evidence to the effect that complaints of the films were made to the defendant by patrons. The plaintiff insists that the court erred in the admission of this testimony as there was no representation made as to the merchantability of the pictures. We think there was no error in the admission of this testimony. The plaintiff knew that these pictures were to be shown or exhibited

by the defendant. The contract called for two-reel Mary Pickford reissues, and were advertised as such. If, when shown, complaints were made to the defendant that he was showing pictures which were not as advertised this evidence was admissible on the question of the defendant's damages for the plaintiff's failure to provide the pictures called for by the agreement, if it was established that the films delivered to the defendant were not according to the contract, there being testimony to this effect.

The third point argued by the plaintiff is that certain testimony as to the loss of profits admitted should have been stricken out as too remote and speculative. There was evidence from which the jury could properly infer that the films delivered were not in accordance with the terms of the agreement between the parties. The plaintiff, as has been said, knew that the purpose of the defendant in securing the films was to exhibit them. If the films shown were not as advertised it would be reasonable to infer that a loss of patronage would occur. The defendant had had experience in the moving picture business. He knew approximately what the profits would be if the pictures shown at his theatre had been two-reel Mary Pickfords. Evidence as to loss of profits is never exact. The evidence offered, we think, was not so remote or speculative that it should have been excluded. The questions which brought it out were not objected to. Later, a motion to strike it out was made and overruled. This ruling we think proper. Such losses must have been within the contemplation of the parties. Under such circumstances damages are recoverable. *Wolcott v. Mount*, 38 *N. J. L.* 496.

The fourth point made by the plaintiff is that the court erred in charging the jury that there could be only two verdicts in the case. The language used by the court was as follows: "Now, the verdict in this case may be either one way or the other. You may find for the plaintiff and against the defendant. If you do, you may say we find for the plaintiff and against the defendant, and assess the plaintiff's damages at so much; now, it may be that you will find for the defendant and against the plaintiff, and if you do, you will

say we find for the defendant and against the plaintiff, and assess the defendant's damages at so much. Those are the two verdicts."

The contention is that there could have been rendered by the jury any one of the following five verdicts—*first*, on the plaintiff's cause of action, the jury might have found for the plaintiff and against the defendant, and assessed the plaintiff's damages; *second*, on the plaintiff's cause of action, the jury might have found a verdict for the defendant; *third*, on the defendant's counter-claim, the jury might have found, as it did find, in favor of the defendant and against the plaintiff, and assessed the defendant's damages; *fourth*, on the defendant's counter-claim, the jury might have found in favor of the plaintiff and refused any damages to the defendant; *fifth*, on the entire case the jury might have refused either plaintiff or defendant damages. Counsel for the plaintiff called the attention of the trial judge to this portion of his charge. He then said that if he put it otherwise than he had stated in his charge the jury would be likely to be confused. While the plaintiff took an exception to this part of the charge, we think that there was nothing erroneous in what the court said. If the plaintiff desired other instructions on the form of the verdict he should have submitted requests to charge. The plaintiff was not, in our opinion, prejudiced by anything on this subject in the charge of the court.

The plaintiff finally argues that the verdict is contrary to the weight of the evidence. The contract provided for two-reel pictures. The contract used the words "Mary Pickford reissues." The evidence showed that but one reel contained pictures of Mary Pickford. The other reel showed only titles and reading matter. There was testimony that two-reel Mary Pickfords meant that the entire picture was made by Mary Pickford; that reissues were pictures which had formerly been shown and then were laid aside and later brought out again; that there was no custom which permitted the padding of a picture, as had been done in this case, and calling it a Mary Pickford. From this testimony we think

the jury were fully justified in finding, as they must have done to arrive at the verdict they did, that by a two-reel Mary Pickford reissue was meant a two-reel picture in which pictures of Mary Pickford appeared in both reels, and not a picture having one of the reels padded with titles, subtitles and reading matter. The verdict was therefore not against the weight of the evidence.

The rule to show cause is discharged.